UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**SAMUEL & STEIN**
David Stein (DS 2119)
38 West 32nd Street
Suite 1110
New York, New York 10001
(212) 563-9884
dstein@samuelandstein.com

Attorneys for Plaintiff, Individually and on behalf of all others similarly situated

| | |
|---|---|
| Francisco Morales, on behalf of himself and all other persons similarly situated,<br><br>        Plaintiff,<br><br>        - vs. -<br><br>LM Academy Realty LLC, Simone Property Management, Inc., Dikran Properties LLC, and Simon Balian,<br><br>        Defendants. | DOCKET NO. 18-CV-5897<br><br>**COMPLAINT** |

Plaintiff Francisco Morales, by and through his undersigned attorneys, for his complaint against defendants LM Academy Realty LLC, Simone Property Management, Inc., Dikran Properties LLC, and Simon Balian, alleges as follows, on behalf of himself and on behalf of all other persons similarly situated:

### NATURE OF THE ACTION

1.   Mr. Morales alleges on behalf of himself and on behalf of other similarly situated current and former

employees of defendants LM Academy Realty LLC, Simone Property Management, Inc., Dikran Properties LLC, and Simon Balian, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) compensation for wages paid at less than the statutory minimum wage; (ii) unpaid wages from defendants for overtime work for which they did not receive overtime premium pay as required by law; and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because defendants' violations lacked a good faith basis.

2.   Mr. Morales further complain that he is entitled to compensation under the New York Labor Law for defendants' violation of the Wage Theft Prevention Act.

## THE PARTIES

3.   Plaintiff Mr. Morales is an adult individual residing in New York, New York.

4.   Mr. Morales consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b); his written consent is attached hereto and incorporated by reference.

5.   Upon information and belief, defendant LM Academy Realty LLC is a limited liability company organized under the laws of the state of New York with a principal place of business at 65 Seaman Ave., Unit CC, New York, New York.

6. Upon information and belief, defendant Simone Property Management, Inc. is a New York corporation with a principal place of business at 65 Seaman Ave., Unit CC, New York, New York.

7. Upon information and belief, defendant Dikran Properties LLC is a limited liability company organized under the laws of the state of New York with a principal place of business at 65 Seaman Ave., Unit CC, New York, New York.

8. At all relevant times, defendants LM Academy Realty LLC, Simone Property Management, Inc., and Dikran Properties LLC (collectively, the "LM Academy defendants") have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

9. Upon information and belief, at all relevant times, the LM Academy defendants have had gross revenues in excess of $500,000.00.

10. Upon information and belief, at all relevant times herein, the LM Academy defendants have used goods and materials produced in interstate commerce, and have employed at least two individuals who handled such goods and materials.

11. At all relevant times, the LM Academy defendants shared common ownership and management, common offices and personnel, and operated for a common business purpose.

12. Upon information and belief, at all relevant times, the LM Academy defendants have constituted a single "enterprise" as defined in the FLSA.

13. For example, the employment-related paperwork received by Mr. Morales, such as paystubs and work orders, sometimes listed one of the LM Academy defendants and sometimes another; nothing else about Mr. Morales's employment changed regardless of what name was on the paperwork.

14. Upon information and belief, defendant Simon Balian is the owner or a part owner and principal of the LM Academy defendants, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

15. Defendant Simon Balian was involved in the day-to-day operations of the LM Academy defendants and played an active role in managing the businesses.

16. For instance, Simon Balian hired Mr. Morales and set his schedule.

17. Defendants constituted "employers" of Mr. Morales as that term is used in the Fair Labor Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because defendants' businesses are located in this district.

## COLLECTIVE ACTION ALLEGATIONS

20. Pursuant to 29 U.S.C. § 206 and § 207, Mr. Morales seeks to prosecute his FLSA claims as a collective action on behalf of a group of individuals defined as follows:

> All persons who are or were formerly employed by defendants in the United States at any time since May 29, 2015, to the entry of judgment in this case (the "Collective Action Period"), who were building superintendents, and who were not paid statutory minimum wages and/or overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

21. The Collective Action Members are similarly situated to Mr. Morales in that they were employed by defendants as building superintendents, and were denied payment at the statutory minimum wage and/or were denied premium overtime pay for hours worked beyond forty hours in a week.

22. They are further similarly situated in that defendants had a policy and practice of knowingly and willfully refusing to pay them the minimum wage or overtime.

23. Mr. Morales and the Collective Action Members perform or performed the same primary duties, and were subjected to the same policies and practices by defendants.

24. The exact number of such individuals is presently unknown, but is known by defendants and can be ascertained through appropriate discovery.

## FACTS

25. At all relevant times herein, the LM Academy defendants owned and managed residential properties in New York, including one located at 603 Academy Street in Manhattan (the "Academy Street Building").

26. Mr. Morales was employed by the LM Academy defendants from approximately 2008 through November 2017, when the Academy Street Building was sold to a new owner.

6

27. Mr. Morales was employed as a building superintendent at the Academy Street Building.

28. Mr. Morales performed the typical duties of a building superintendent, such as cleaning and maintaining the building, taking out the trash and separating the recyclables, and performing repairs for tenants.

29. In addition, defendants would sporadically assign Mr. Morales to do repair work in other buildings owned by defendants.

30. Mr. Morales's work was performed in the normal course of defendants' business and was integrated into the business of defendants, and did not involve executive or administrative responsibilities.

31. At all relevant times herein, Mr. Morales was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

32. Mr. Morales regularly worked seven days per week for defendants.

33. On Monday through Friday, Mr. Morales would typically work roughly twelve-hour days. On Saturdays he would typically work approximately 8 hours, and on Sundays he would usually work about 4 hours.

34. As a result, Mr. Morales generally worked approximately 72 hours per week each week of his employment with the LM Academy defendants.

35. Defendants did not provide a time clock, computer punch, timesheets, or any other method for Mr. Morales to track his time worked.

36. Mr. Morales was paid once per month, on a salary basis, throughout his employment.

37. When Mr. Morales's employment began, he was paid $1,500 per month; he got periodic raises thereafter, until his salary reached $2,250 per month in January 2017.

38. As a result, Mr. Morales's effective rate of pay was below the statutory federal minimum wage throughout his employment.

39. Defendants' failure to pay Mr. Morales an amount at least equal to the federal minimum wages in effect during his employment was willful, and lacked a good faith basis.

40. In addition, defendants failed to pay Mr. Morales any overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA.

41. Defendants' failure to pay Mr. Morales the overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

42. Mr. Morales was paid by check, and received paystubs. However, these stubs were not compliant with the New York Labor Law in that they did not list regular or overtime hourly rates, regular or overtime hours worked, or any allowances claimed, nor did they contain information about the pay periods covered or contact information for the employer.

43. Defendants failed to provide Mr. Morales with written notices providing the information required by the New York Labor Law – including, *inter alia*, defendants' contact information, plaintiff's regular and overtime rates, and intended allowances claimed – and failed to obtain his signature acknowledging the same, upon his hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

44. Defendants failed to provide Mr. Morales with accurate, compliant weekly records of his compensation and hours worked, in violation of the Wage Theft Prevention Act.

45. Throughout the period of Mr. Morales's employment, both before that time (throughout the Collective Action Period) and continuing until today, defendants have likewise employed other individuals like plaintiff (the Collective Action Members) as building

superintendents, in positions that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

46. Defendants applied the same employment policies, practices, and procedures to all Collective Action Members, including policies, practices, and procedures with respect to the payment of minimum wages and overtime.

47. Defendants have likewise failed to pay these other individuals at a rate at least equal to the minimum wage, in violation of the FLSA.

48. These other individuals have worked in excess of forty hours per week, yet defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA.

49. Upon information and belief, these other individuals were not provided with required annual or accurate, compliant weekly wage notices as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

50. Upon information and belief, while defendants employed Mr. Morales and the Collective Action members, and through all relevant time periods, defendants failed to maintain accurate and sufficient time records or provide

accurate records to employees, and failed to post or keep posted notices explaining the minimum wage and overtime pay rights provided by the FLSA.

### COUNT I

### (Fair Labor Standards Act – Minimum Wage)

51. Mr. Morales, on behalf of himself and all Collective Action Members, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

52. At all relevant times, defendants employed Mr. Morales and the Collective Action Members within the meaning of the FLSA.

53. Defendants failed to pay a salary greater than the minimum wage to Mr. Morales and the Collective Action Members for all hours worked.

54. As a result of defendants' willful failure to compensate Mr. Morales and the Collective Action Members at a rate at least equal to the federal minimum wage for each hour worked, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206.

55. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29

U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

56. Due to defendants' FLSA violations, Mr. Morales and the Collective Action Members are entitled to recover from defendants their unpaid compensation plus liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### (Fair Labor Standards Act - Overtime)

57. Mr. Morales, on behalf of himself and all Collective Action Members, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

58. At all relevant times, defendants employed Mr. Morales and each of the Collective Action Members within the meaning of the FLSA.

59. At all relevant times, defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

60. As a result of defendants' willful failure to compensate their employees, including Mr. Morales and the Collective Action Members, at a rate at least one-and-one-

12

half times their lawful regular rates of pay for work performed in excess of forty hours per workweek, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

61. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacks a good faith basis within the meaning of 29 U.S.C. § 260.

62. Due to defendants' FLSA violations, Mr. Morales and the Collective Action Members are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III

### (New York Labor Law – Wage Theft Prevention Act)

63. Mr. Morales repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

64. At all relevant times, Mr. Morales was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

65. Defendants willfully violated Mr. Morales's rights by failing to provide him with the wage notices required by the Wage Theft Prevention Act when he was hired, or at any time thereafter.

66. Defendants willfully violated Mr. Morales's rights by failing to provide him with compliant wage statements/paystubs required by the Wage Theft Prevention Act at any time during his employment.

67. Due to defendants' New York Labor Law violations relating to the failure to provide compliant paystubs, Mr. Morales is entitled to recover from the defendants statutory damages of $100 per week through February 26, 2015, and $250 per day from February 27, 2015 through the end of his employment, up to the maximum statutory damages.

68. Due to defendants' New York Labor Law violations relating to the failure to provide wage notices, Mr. Morales is entitled to recover from the defendants statutory damages of $50 per week through February 26, 2015, and $50 per day from February 27, 2015 to the termination of his employment, up to the maximum statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Morales respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing Mr. Morales and his counsel to represent the Collective Action members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An injunction against defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

15

d. Compensatory damages for failure to pay the minimum wage pursuant to the FLSA;

e. A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA;

f. An award of liquidated damages as a result of defendants' willful failure to pay the statutory minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

g. Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

h. Back pay;

i. Punitive damages;

j. An award of prejudgment and postjudgment interest;

k. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l. Such other, further, and different relief as this Court deems just and proper.

Dated:  May 29, 2018

_____
David Stein (DS-2119)

```
                         SAMUEL & STEIN
                         38 West 32nd Street
                         Suite 1110
                         New York, New York 10001
                         (212) 563-9884

                         Attorneys for Plaintiff
```

# EXHIBIT A

## CONSENT TO SUE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of LM Academy Realty Inc. and its owners and affiliates to pay me, *inter alia*, minimum wage and overtime wages as required under state and/or federal law and also authorize the filing of this consent in the lawsuit challenging such conduct, and consent to being named as a representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning all aspects of this lawsuit. I have been provided with a copy of a retainer agreement with the law firm of Samuel & Stein, and I agree to be bound by its terms.

Con mi firma abajo, autorizo la presentación y tramitación de reclamaciones en mi nombre y de mi parte para impugnar el fallo de LM Academy Realty Inc. y sus propietarios y afiliados a me pagan, entre otras cosas, el salario mínimo y pago de horas extras, requerida en el estado y / o la ley federal y también autorizan la presentación de este consentimiento en la demanda contra ese tipo de conducta, y el consentimiento para ser nombrado como demandante representante en esta acción para tomar decisiones en nombre de todos los demás demandantes en relación con todos aspectos de esta demanda. Se me ha proporcionado una copia de un acuerdo de retención con la firma de abogados de Samuel y Stein, y estoy de acuerdo en estar obligado por sus términos.

*/s/ Francisco A Morales*
Francisco Morales

Date: February 5, 2018